IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MILLARD E. PRICE,               )
                                )
            Plaintiff,          )
                                )
     v.                         )      Civ. No. 23-1062-CFC
                                )
CENTURION OF DELAWARE,          )
LLC, *et al.*,                  )
                                )
            Defendants.         )

---

Millard E. Price, Howard R. Young Correctional Institution, Wilmington, Delaware – *Pro se* Plaintiff

Dawn C. Doherty, Brett Thomas Norton, and Georgia Catherine Pham, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, Delaware – Counsel for Defendants Centurion of Delaware, LLC, Christine Onafrio, Jacklyn S. Martin, and Maryann A. Muhammad

**<u>MEMORANDUM OPINION</u>**

June 13, 2025
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

On September 27, 2023, Plaintiff Millard E. Price, an inmate at the Howard R. Young Correctional Institution (HRYCI) in Wilmington, Delaware, initiated this civil action *pro se* with the filing of the Complaint and a motion for leave to proceed *in forma pauperis*. (D.I. 1, 2.) Now pending before the Court is a motion to dismiss the Complaint filed on behalf of Defendants Centurion of Delaware, LLC, Christine Onafrio, Jacklyn S. Martin, and Maryann A. Muhammad (the moving Defendants). (D.I. 28.) The Court grants the motion to dismiss in part, and denies the motion to dismiss in part, for the reasons explained below.

## I. BACKGROUND

According to the Complaint, Plaintiff lives with chronic pain and neuropathy resulting from a serious spinal condition, for which he underwent two corrective or palliative surgeries in 2019 and 2020. (D.I. 2 at 1, 8.) Plaintiff's chronic pain was treated effectively with Tramadol from 2017 to 2020, in accordance with the recommendation of one of Plaintiff's surgeons. (*Id.*) Thereafter, medical staff for Defendant Centurion (HRYCI's medical services provider at the time) informed Plaintiff that they could no longer prescribe Tramadol for Plaintiff's chronic pain due to an unspecified medical policy. (*Id.*) Centurion providers required Plaintiff to stop taking Tramadol "cold turkey," and they prescribed him Tylenol in lieu of Tramadol for pain. (*Id.* at 2, 8.)

1

In 2021, an outside specialist evaluated Plaintiff, recommended Tramadol for pain management, and recommended further evaluation by a neurosurgeon.   (*Id.*) On this recommendation, a Centurion nurse practitioner, Defendant Muhammad, prescribed Plaintiff Tramadol in early November 2021 and referred Plaintiff to neurosurgery.   (*Id.* at 10.)

Approximately four months and three weeks later, Defendant Crosby, a clinical pharmacist for Centurion, met with Plaintiff and informed him that a medical policy prohibited the use of Tramadol for chronic non-cancer-related pain management.   (*Id.*)   Defendant Crosby told Plaintiff that he would recommend Cymbalta in lieu of Tramadol for Plaintiff's chronic pain, even though Plaintiff told Defendant Crosby that he could not take Cymbalta due to the potential side effects. (*Id.*)

Several days later, Defendant Muhammad confirmed that Plaintiff's Tramadol prescription was being terminated due to the medical policy prohibiting the use of Tramadol for chronic pain unrelated to cancer.   (*Id.* at 11.)   Defendant Muhammad prescribed Cymbalta over Plaintiff's objection and explained that she was not required to adhere to the outside specialist's 2021 recommendations.   (*Id.*) Defendant Muhammad made this decision with knowledge of Plaintiff's condition as his provider.   (*Id.*)   Defendant Muhammad had reviewed Plaintiff's 2021 MRI results, which revealed herniated discs and other spinal problems, and she had

2

reviewed the assessment of a secondary outside specialist, who stated that Plaintiff may suffer "total denervation and use of [his] left leg" if his spinal issues were not addressed.    (*Id.* at 9.)

Plaintiff submitted a medical grievance regarding the change in medication from Tramadol to Cymbalta, which was denied, and Plaintiff appealed, but the determination was upheld.    (*Id.* at 12.)    Over a month after the change in medication, Plaintiff submitted a sick call request for ongoing pain, and Defendant Muhammad responded, telling Plaintiff that Centurion's medical director, Defendant Martin, had cancelled Plaintiff's treatment with the outside specialist who evaluated Plaintiff in 2021.    (*Id.*)

Despite cancellation of treatment with the outside specialist, approximately eight months and one week after the outside specialist recommended further evaluation by a neurosurgeon, a neurosurgeon evaluated Plaintiff.    (*Id.* at 13.) The neurosurgeon assessed Plaintiff's condition as severe and recommended a third spinal surgery but could not say whether surgery would alleviate Plaintiff's chronic pain, so Plaintiff requested a second opinion.    (*Id.* at 3, 13.)    Plaintiff submitted repeated sick calls and a medical grievance following the visit with the neurosurgeon, but Centurion providers did not give Plaintiff with the opportunity to seek a second opinion.    (*Id.*)

Approximately seven months and three weeks after the neurosurgeon's evaluation, Defendants Martin and Muhammad met with Plaintiff regarding his situation.   (*Id.* at 14.)   During the meeting, Defendant Martin told Plaintiff, "We know you are in pain[,] so please stop with the sick calls[.   ]Work with us and we'll try to help you," and Defendant Muhammad told Plaintiff, "I had to terminate your Tramadol.   I was under the impression you would be getting surgery in a couple of months."   (*Id.*)

Approximately one month and one week after the meeting with Defendants Martin and Muhammad, Defendants Martin and Crosby met with Plaintiff to discuss possible alternatives to Tramadol, all of which Plaintiff rejected.   (*Id.*)   Plaintiff rejected these alternative drugs because, like Cymbalta, they were antidepressants, and Plaintiff was concerned about their efficacy and side effects.   (*Id.* at 14, 17.) During this meeting, Plaintiff stated that if he was not going to receive authorization to seek a second opinion, he wanted to move forward with the third spinal surgery. (*Id.* at 14.)

One week later, Defendants Martin and Onafrio met with Plaintiff to reschedule Plaintiff's spinal surgery with the neurosurgeon.   (*Id.*)   A week after that meeting, Defendant Martin prescribed Pamelor in lieu of Tramadol for Plaintiff's chronic pain.   (*Id.*)   Like Cymbalta, Pamelor was an antidepressant, so Plaintiff did not think it was appropriate for pain management in his case.   (*Id.*)

4

After being prescribed Pamelor for two weeks, Plaintiff sent Defendant Martin a letter, informing him that Pamelor was having no effect on his pain.    (*Id.* at 14-15.) Plaintiff sent Defendant Martin a second letter, stating the same, one week later. (*Id.* at 15.)

Approximately ten months and one week after the neurosurgeon's evaluation, and one month and two weeks after Plaintiff had agreed to the third spinal surgery, Defendant Martin informed Plaintiff that the neurosurgeon had been replaced with a new neurosurgeon, who would require Plaintiff to undergo a new MRI and physical therapy before reevaluating him for surgery.    (*Id.* at 3, 15.)    Defendant Martin increased Plaintiff's dosage of Pamelor and said Plaintiff would see the new neurosurgeon in two or three months.    (*Id.* at 15.)

As the three-month mark approached, and then passed, Plaintiff wrote letters to Defendants Onafrio and Martin to inquire about his appointment with the new neurosurgeon and to relay that Pamelor was having no effect on his pain.    (*Id.*) Plaintiff then learned that he could not be scheduled to see the new neurosurgeon until he completed twelve physical therapy sessions.    (*Id.*)    Only two physical therapy sessions had been scheduled for Plaintiff at that point, so Plaintiff again wrote to Defendant Martin, after which time, a third physical therapy session was scheduled and Plaintiff's Pamelor prescription was cancelled, with no substitute. (*Id.* at 15-16.)

Around this time, Defendant VitalCore assumed the role of medical services provider at HRYCI, and Defendant Centurion transitioned out of role.    (*Id.* at 16.) After taking over, Defendant VitalCore allowed all of Plaintiff's prescriptions to expire and failed to renew them for weeks.    (*Id.*)    Plaintiff believes that Defendant VitalCore did this intentionally as a cost saving measure, which put Plaintiff's health at risk, because he required regularly administered medications for high blood pressure, cholesterol, chronic pain, and other conditions.    (*Id.*)    After Defendant VitalCore took over, Plaintiff submitted at least five sick calls, which were never responded to by medical staff.    (*Id.* at 16-17.)    Nevertheless, Defendant VitalCore continued to schedule physical therapy sessions for Plaintiff at a rate of approximately one session per month.    (*Id.* at 3.)    Plaintiff attended five physical therapy sessions over the course of five months prior to submitting the Complaint. (*Id.*)

Based on the foregoing, the Complaint alleges Defendants violated Plaintiff's rights under the Fifth, Eighth, and Fourteenth Amendments and the Delaware Constitution.    (*Id.* at 17-27.)    The Complaint asserts that the refusal to prescribe Tramadol for pain management based on an unspecified medical policy, along with the delay in Plaintiff's third spinal surgery, amount to deliberate indifference to Plaintiff's serious medical need by Defendants, in violation of the Eighth Amendment.    (*Id.* at 3-4.)    On this basis, Plaintiff requests injunctive and

declaratory relief and $1 million in compensatory and punitive damages. (*Id.* at 4, 27-29.)

## II.    LEGAL STANDARD

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal

theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

This Court previously dismissed Plaintiff's Fifth and Fourteenth Amendment claims and terminated all Delaware Department of Correction (DDOC) Defendants from this case. (*See* D.I. 12 at 1-2.) The Court now considers Plaintiff's Eighth Amendment claims against the moving Defendants, with the benefit of party briefing. For Plaintiff to prevail on his Eighth Amendment claims, he must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with deliberate indifference to this risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To survive a motion to dismiss, the Complaint must plausibly state an objective "sufficiently serious risk," as well as subjective

8

"deliberate indifference" by Defendants. *See id.*

Upon review and consideration, the Court will dismiss Plaintiff's Eighth Amendment claims arising from the alleged delay in his third spinal surgery. While the Complaint plausibly states, and the moving Defendants do not contest, that Plaintiff had sufficiently serious medical needs, the Complaint does not raise a plausible claim for deliberate indifference by Defendants to Plaintiff's need for surgery. Medical staff and prison officials are not deliberately indifferent to a prisoner's medical needs unless they act wantonly, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and whether their conduct "can be characterized as 'wanton' depends upon the constraints facing the official[s]," *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Even if officials know of a substantial risk, they are not liable "if they responded reasonably," and what is reasonable depends on the circumstances, which normally constrain what actions they can take. *Farmer*, 511 U.S. at 844.

From the Complaint, it is apparent that Defendants' ability to respond to Plaintiff's need for spinal surgery was constrained by factors outside of their control. Initially, Defendants' ability to respond was constrained by Plaintiff's lack of consent to the surgery for nine months. Although Plaintiff credits this delay to Defendants' denial of his repeated requests for a second opinion, this amounts to a disagreement regarding appropriate treatment not in violation of the Eighth Amendment. *See McFadden v. Dalmasi*, 2019 WL 6218220, at *15

9

(E.D. Pa. Nov.  21, 2019), *aff'd*, 837 F. App'x 135 (3d Cir. 2020) (collecting cases). Defendants' inability to schedule Plaintiff for surgery without Plaintiff's consent does not plausibly show deliberate indifference by Defendants.

After Plaintiff consented to surgery, Defendant's ability to respond was then constrained by other factors, including the resignation or departure of the recommending neurosurgeon and the prerequisites imposed by the new neurosurgeon, *i.e.*, that Plaintiff receive another MRI and twelve physical therapy sessions, prior to reevaluation for surgery.   The Complaint shows that, under these constraints, Defendants responded reasonably by meeting with Plaintiff on numerous occasions and scheduling outside appointments, MRIs, and physical therapy sessions for him.   While Plaintiff was not satisfied with the once-a-month pace of physical therapy, without more, this does not plausibly show deliberate indifference by Defendants.

Next, the Court considers Plaintiff's Eighth Amendment claims arising from the alleged denial of Tramadol for treatment of Plaintiff's chronic pain.   Viewed in the light most favorable to Plaintiff, the Complaint plausibly states that Defendants effectively treated Plaintiff's chronic pain with Tramadol from 2017 to 2020, that Defendants' took Plaintiff off Tramadol because of a HRYCI medical policy of treating no case of chronic pain with the drug absent a cancer diagnosis, and that since the end of March 2022, Defendants' course of treatment without Tramadol has

left Plaintiff in severe chronic pain, which Plaintiff has repeatedly communicated to and discussed with Defendants.

The Court affords considerable deference to a provider's medical judgment in treating an inmate's medical condition, *see Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), and mere disagreement regarding the appropriate course of treatment or medication does not violate the Eighth Amendment, *see Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Yet, under extreme circumstances, a provider's refusal to prescribe an inmate stronger pain medication can support an Eighth Amendment claim. *See, e.g., Tenon v. Dreibelbis*, 606 F. App'x 681, 686 (3d Cir. 2015). Along similar lines, some courts have found plausible claims for deliberate indifference where providers stopped effectively treating severe chronic pain due to general policies or guidelines regarding Tramadol. *See., e.g., Scriven v. VitalCore Health Strategies, LLC*, 2024 WL 2091372, at *7-13 (D. Kan. May 9, 2024); *Atwood v. Days*, 2024 WL 810563, at *9-14 (D. Ariz. Feb. 27, 2024); *Buehl v. Wexford Health Sources, Inc.*, 2017 WL 914275, at *8 (M.D. Pa. Mar. 8, 2017).

General guidance on the deliberate indifference standard lends some support to these findings. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (stating that "knowing of a prisoner's need for medical treatment but intentionally refus[ing]

11

to provide it," "delay[ing] necessary medical treatment based on a non-medical reason," "prevent[ing] a prisoner from receiving needed or recommended medical treatment," or "persist[ing] in a particular course of treatment in the face of resultant pain and risk of permanent injury" can show deliberate indifference).   Based on the foregoing, at this stage of the case, the Court declines to dismiss Plaintiff's Eighth Amendment claims arising from the denial of Tramadol for treatment of his chronic pain.   From briefing, it appears the parties may disagree on facts underlying these claims, which may be appropriate to take up later in the proceeding.

Last, the Court notes Plaintiff's Eighth Amendment claims arising from Defendant VitalCore's alleged failure to refill Plaintiff's prescriptions and respond to sick calls.   Defendants VitalCore and Amoah D. Crosby have not yet answered the Complaint or otherwise defended.   The record does not reflect that service has been perfected on Defendant VitalCore.   These matters will be addressed in a separate supplemental service Order, and the Court will not consider claims arising from Defendant VitalCore's alleged acts or omissions at this time.

## IV.   CONCLUSION

For the reasons discussed above, the Court will grant in part, and deny in part, the moving Defendants' motion to dismiss the Complaint.   (D.I. 28.)

An appropriate Order will be entered.

12